IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION



U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

SEP 27 2010

CLERK, U.S. DISTRICT COURT
By_____
        Deputy

| | |
|---|---|
| AMERICAN BANK, F.S.B., §<br>through its division §<br>American Premium Finance, §<br>§<br>Plaintiff, §<br>§<br>VS. §<br>§<br>AUTO-OWNERS MUTUAL FIRE & §<br>CASUALTY INSURANCE COMPANY, §<br>§<br>Defendant. § | NO. 4:10-CV-331-A |

MEMORANDUM OPINION
and
ORDER

Came on for consideration the motion of defendant, Auto-
Owners Insurance Company,[1] to dismiss for lack of personal
jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of
Civil Procedure. Plaintiff, American Bank, F.S.B., through its
division American Premium Finance, filed a response, and
defendant filed a reply.[2] Having now considered the filings of
the parties, the pleadings, and the applicable legal authorities,
the court concludes that the motion should be granted.

---

[1] The parties apparently are in agreement that plaintiff used an incorrect name in plaintiff's original
pleading and in the style, and that the correct name of the defendant is "Auto-Owners Insurance
Company," which is the name the court uses for defendant.

[2] Plaintiff filed a motion to strike defendant's reply and supporting appendix. Rather than rule on the
motion, the court will give the reply and its appendix whatever weight and consideration they deserve.

## Background

Plaintiff initiated this removed action by the filing on March 15, 2010, of a petition in the district court of Tarrant County, Texas, in which plaintiff alleged that:

Plaintiff provided financing for the payment of insurance premiums, including for policies sold through the Dean & Moore Insurance Agency ("Dean & Moore"), which sold policies issued by defendant. When an insured wanted to finance the payment of premiums, Dean & Moore completed a Premium Finance Agreement ("Agreement"), which was signed by the insured and Dean & Moore, and sent by Dean & Moore to plaintiff. Upon acceptance of the Agreement, plaintiff paid the proceeds of the financing to Dean & Moore.

After financing defendant's policies sold by Dean & Moore for some time, plaintiff discovered that a portion of the policies for which Dean & Moore had submitted Agreements were either for fictitious insureds or significantly overstated the amount of premium to be financed. Dean & Moore deposited the proceeds from these fictitious or fraudulent accounts into its own account for its own use. Defendant was in the best position

to know of the wrongful acts of Dean & Moore, yet defendant failed to notify plaintiff of the fraudulent acts or take appropriate corrective action.

Plaintiff seeks recovery from defendant of damages allegedly caused by breach of contract and/or express warranty, fraud, negligent misrepresentation, negligence, and gross negligence.

II.

## Applicable Principles of Personal Jurisdiction

"When a nonresident defendant presents a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that <u>in personam</u> jurisdiction exists." <u>Stuart v. Spademan</u>, 772 F.2d 1185, 1192 (5th Cir. 1985); <u>D.J. Invs., Inc. v. Metzeler Motorcycle Tire Agent Gregg, Inc.</u>, 754 F.2d 542, 545-46 (5th Cir. 1985). The plaintiff need not, however, establish personal jurisdiction by a preponderance of the evidence; <u>prima facie</u> evidence of personal jurisdiction is sufficient. <u>Wyatt v. Kaplan</u>, 686 F.2d 276, 280 (5th Cir. 1982). The court may resolve a jurisdictional issue by reviewing pleadings, affidavits, interrogatories, depositions, oral testimony, exhibits, any part of the record, and any combination thereof. <u>Stuart</u>, 772 F.2d at 1192. Allegations of the plaintiff's complaint are taken as true except to the extent that they are contradicted by defendant's

3

affidavits. Wyatt, 686 F.2d at 282-83 n.13 (citing Black v. Acme Markets, Inc., 564 F.2d 681, 683 n.3 (5th Cir. 1977)). Any genuine, material conflicts between the facts established by the parties' affidavits and other evidence are resolved in favor of plaintiff for purposes of determining whether a prima facie case exists. Bullion v. Gillespie, 895 F.2d 213, 217 (5th Cir. 1990).

In a diversity action, a federal district court may exercise personal jurisdiction over a nonresident if (1) the nonresident defendant is amenable to service of process under the law of a forum state, and (2) the exercise of jurisdiction under state law comports with the due process clause of the Fourteenth Amendment. Stuart, 772 F.2d at 1189 (internal citations omitted). Since the Texas long-arm statute has been interpreted as extending to the limits of due process,[3] the only inquiry is whether the exercise of jurisdiction over the nonresident defendant would be consistent with due process. Id.

The exercise of jurisdiction over a nonresident defendant comports with due process if (1) the nonresident defendant has purposefully availed himself of the benefits and protections of the forum state by establishing minimum contacts with the forum state; and (2) the exercise of jurisdiction over the defendant

---

[3]See, e.g., Kawasaki Steel Corp. v. Middleton, 699 S.W.2d 199, 200 (Tex. 1985).

4

does not offend "traditional notions of fair play and substantial justice." Latshaw v. Johnston, 167 F.3d 208, 211 (5th Cir. 1999) (quoting International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). A defendant's contacts with the forum state constitute minimum contacts if they are such that he "should reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).

Minimum contacts may give rise to general or specific jurisdiction. Luv N' Care, Ltd. v. Insta-Mix, Inc., 438 F.3d 465, 469 (5th Cir. 2006). For specific jurisdiction to exist, the foreign defendant must purposefully do some act or consummate some transaction in the forum state and the cause of action must arise from or be connected with such act or transaction. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985). "The appropriate inquiry is whether the defendant purposefully availed [itself] of the privilege of conducting activities in-state, thereby invoking the benefits and protections of the forum state's laws." Id. at 474-75.

Even if the controversy does not arise out of or relate to the nonresident defendant's purposeful contacts with the forum, general jurisdiction may be exercised when the nonresident defendant's contacts with the forum are sufficiently continuous

and systematic as to support the reasonable exercise of jurisdiction. <u>Helicopteros Nacionales de Colombia, S.A. v. Hall</u>, 466 U.S. 408, 416 (1984); <u>Keeton v. Hustler Magazine, Inc.</u>, 465 U.S. 770, 779 (1984); <u>Perkins v. Benguet Consol. Mining Co.</u>, 342 U.S. 437 (1952).

III.

<u>Jurisdictional Allegations and Evidence</u>

A.  <u>Jurisdictional Allegations</u>

Plaintiff fails to allege any specific facts in its petition in support of its claim that this court can exercise personal jurisdiction over defendant. Rather, there are only conclusory allegations that defendant "generally does business in Texas and is authorized to transact insurance business in the state [sic] of Texas." Notice of Removal, Ex. C-2 at 2, ¶ 3.01.

B.  <u>Evidence Submitted by the Parties</u>

In support of its motion and reply, defendant provided two declarations of Thomas Froman ("Froman"), an Assistant Vice President of defendant, establishing defendant's lack of contacts with Texas.

Plaintiff submitted an appendix of evidence in support of its response to the motion to dismiss, comprised largely of reports produced by defendant during discovery. The nature of

the evidentiary materials was established by a stipulation of the parties.

IV.

Application of Law to the Facts

Plaintiff contends that the court has both specific and general jurisdiction over defendant. The court concludes that plaintiff has failed to show that the court can exercise jurisdiction over defendant's person under either theory.

A.  No Specific Jurisdiction

Plaintiff claims specific jurisdiction based on a written affirmation provided by defendant to plaintiff concerning the limited authority of Dean & Moore to act on defendant's behalf. In 2007, after being asked by Dean & Moore to finance premiums on defendant's insurance policies, plaintiff sent to defendant, and defendant returned to plaintiff, a form regarding Dean & Moore, stating:

> AMERICAN BANK, AMERICAN PREMIUM FINANCE operates as a premium finance lender.
>
> In this capacity we have been requested by producers to finance your company's policies written through the above referenced agent. In order to expedite the financing in accordance with your requirements, we request confirmation of the following points.

In which capacity does this agency act for your
company?

___Wholesale Broker        ___General Agent
___Surplus Lines Broker    ___Broker

Which of the following does their authority include.

___Issuing policies in your name.
___Canceling policies in your name.
___Sign Acknowledgment of Financed Premium and or
   similar forms.
___Collecting money on your behalf.
   If the above is checked, may they direct payment to
   a sub producer.

Pl.'s App. at 3A.  The form included a space for the signature of

defendant's "Authorized Representative" as well as a direction to

"fax response to" a specified number.  Id.

Defendant's handwritten response to the first question,

written underneath the choices provided in the form, was:

   X   AGENT

Id.  In response to the second question, defendant checked the

blank next to "collecting money on your behalf."  The form was

signed by defendant's representative and apparently returned to

plaintiff via facsimile.

Plaintiff contends that all of its claims purportedly arise

"directly out of this contract by [defendant] with [plaintiff] in

Texas and its agent's subsequent contacts with [plaintiff] in

Texas."[4]  Pl.'s Resp. at 7.  In other words, specific

_____

[4]Plaintiff repeatedly refers to this document as a "contract" between it and defendant, and in so doing,

(continued...)

jurisdiction exists, in plaintiff's view, because plaintiff began financing premiums for defendant's policies sold through Dean & Moore as a result of this single document.

The exercise of specific jurisdiction is proper when the nonresident defendant "has purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities." Panda Brandywine Corp. v. Potomac Elec. Power Co., 253 F.3d 865, 868 (5th Cir. 2001) (internal citations omitted). The unilateral activity of a plaintiff cannot create specific jurisdiction over a non-resident defendant. World-Wide Volkswagon, 444 U.S. at 298; Bullion, 895 F.2d at 216. Thus, plaintiff's unilateral act of sending a form to defendant with the request that it be completed and returned to plaintiff in Texas cannot give rise to specific jurisdiction over defendant in Texas. Defendant's act of returning the unsolicited document to the plaintiff in Texas is hardly an act by which defendant "purposefully directed its activities at the forum state."

Nor, as plaintiff contends, do its claims arise from the form. Plaintiff's claims arise from the allegedly fraudulent agreements submitted by Dean & Moore, not from defendant's brief

---

[4](...continued)
significantly overstates the nature of the document. Nothing about the nature or contents of the document could be construed as a "contract," as there is no evidence on the face of the document that it contains any agreement of the parties as to anything.

response to plaintiff's inquiry. Specific jurisdiction requires that a party have "fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign." Burger King Corp., 471 U.S. at 472 (brackets in original). The court finds nothing in the form that gives defendant fair warning that its response could subject it to litigation in Texas.[5]

To the extent plaintiff asks the court to assert specific jurisdiction over defendant due to the acts of Dean & Moore, this argument likewise fails. The acts of an independent contractor cannot be imputed to a nonresident defendant in order to maintain specific jurisdiction over the nonresident. See, e.g., Smith v. Piper Aircraft Corp., 425 F.2d 823, 825 (5th Cir. 1970). The agency agreement between defendant and Dean & Moore makes clear that Dean & Moore was an independent contractor.

In order to impute Dean & Moore's acts to defendant for jurisdictional purposes requires a finding that defendant had the right to control the "means and the details by which the agent is to accomplish his task." In re Carolin Paxson Adver., Inc., 938 F.2d 595, 598 (5th Cir. 1991). Froman declared that defendant did not control the business operations of Dean & Moore, and

---

[5]Nothing in the form evidences a connection with Texas. Dean & Moore's address is listed in Georgia, and the form does not state that Dean & Moore sells defendant's policies in Texas. The word "Texas" does not even appear on the face of the form.

plaintiff has offered no controverting evidence. That declaration is unchallenged.

B.    No General Jurisdiction

The Fifth Circuit imposes a "high standard set by the Supreme Court" to establish general jurisdiction, and recognizes "just how difficult it is" to meet the standard. Johnston v. Multidata Sys. Int'l Corp., 523 F.3d 602, 610-11 (5th Cir. 2008). Plaintiff's attempts to establish general jurisdiction over defendant fail to meet that standard.

In Helicopteros, the leading Supreme Court case concerning general jurisdiction, the Court found general jurisdiction lacking despite the defendant's extensive contacts with Texas, including the purchase of approximately eighty percent of its helicopter fleet, parts, and accessories from a Texas company, sending prospective pilots and management and maintenance personnel to Texas for training and consultation, sending its chief executive officer into Texas to negotiate a contract, and accepting a $5 million check drawn on a Texas bank. 466 U.S. at 411, 416-19.

The Fifth Circuit in Access Telecom, Inc. v. Telecommunications Corp. likewise affirmed a finding of no proof of general jurisdiction even though the defendant had "numerous" contacts with Texas over a period of years, including leasing

telephone lines and real property in the state, paying taxes in Texas, contracting to warehouse 75,000 telephone poles in Texas, and receiving revenue from Texas residents totaling millions of dollars per month. 197 F.3d 694, 717 (5th Cir. 1999). The court concluded that defendant's contacts failed to demonstrate a business presence in Texas sufficient to sustain general jurisdiction. Id. at 718.

The holdings in Helicopteros and Access Telecom, respectively, that the facts presented would not support a finding of general jurisdiction would seem necessarily to lead to the conclusion that the facts presented to the court in this case would not support general jurisdiction. The direct contacts between the defendants in those cases and the forum state were far more significant than any contacts that have been shown by the record in this case to exist between defendant and Texas.

Plaintiff contends that defendant's contacts with Texas were continuous and systematic enough to support general jurisdiction because defendant: was licensed by the Texas Department of Insurance until September 8, 2008; contracted and communicated with, and issued insurance policies to, its insureds located in Texas; billed and collected premiums from insureds in Texas; adjusted and paid claims by and against its insureds in Texas on insurance policies issued to Texas insureds; hired and paid Texas

attorneys to represent it and its insureds when they were sued in Texas more than 100 times during the past ten years; purposefully invoked the jurisdiction of a Texas court by filing suit in Dallas County to collect a debt; contracted with Texas-based vendors and paid them more than $25 million over the past five years; purchased almost $400 million worth of Texas municipal bonds, upon which defendant receives over $15,000,000 annually in interest; and paid over $80,000,000 in claims-related expenses to Texas-based insureds, claimants, adjusters, and others. Plaintiff's jurisdictional contentions fail to carry the day, even when considered in toto. Access Telecom, 197 F.3d at 717.

Plaintiff's primary assertion of general jurisdiction is heavily grounded on its allegation that defendant has sold, and continues to sell, numerous insurance policies to Texas residents. In support, plaintiff refers to defendant's report reflecting insurance policies issued by defendant to insureds that had a Texas address "at some point in time during the policy period," Pl.'s App., Ex. 2 at 3 ¶ 4, and a report generated by defendant reflecting payments made to claimants, claims adjusters, appraisers, lawyers and law firms, insureds, and others, all with a Texas mailing address, id. Ex. 10. Froman's unchallenged declaration, in contrast, states that defendant relinquished its license in September 2008; it never sold

insurance policies in the State of Texas even when licensed; and its policies are sold by independent agents outside of Texas who are not permitted to write policies for property in Texas.

The court concludes that, at most, the evidence shows that some of defendant's insureds had a Texas address, and might have resided in Texas, at some point during the time they held a policy with defendant. Although plaintiff interprets the evidence differently, it provides no evidence to support its interpretation.[6] The computer printouts on which plaintiff relies say nothing about where the policies in question were sold, who sold them, where the agent selling the policy was located, or even whether the insured resided in Texas at the time the policy was purchased from defendant. The evidence fails to establish continuous or systematic contacts by defendant with Texas.

Even if, notwithstanding the absence of evidence of Texas sales, the court were to assume that defendant sold some of the policies in Texas, sales of a product in the forum state are generally insufficient to establish general jurisdiction. See, e.g., Johnston, 523 F.3d at 612 (defendant's sale of

---

[6]Although the court is to resolve conflicts between the facts in the parties affidavits in plaintiff's favor, plaintiff offers only its unsupported interpretation of the evidence to support its jurisdictional allegations. The only affidavit offered by plaintiff is that of Gwen Cohee-Thompson, director of American Premium Finance, one of plaintiff's divisions. Nothing in Cohee-Thompson's affidavit purports to rebut the facts stated by Froman concerning defendant's lack of activity in Texas.

approximately $140,000 worth of goods in Texas plus travel by five of its employees to Texas insufficient to justify general jurisdiction); Bearry v. Beech Aircraft Corp., 818 F.2d 370, 373-76 (5th Cir. 1987) (sale of over $250 million of products to Texas customers over five years did not support general jurisdiction).

The fact that defendant was once licensed by the Texas Department of Insurance is also of little bearing, as registering to do business in the forum state carries "no special weight," and fails to create the "general business presence" necessary for a finding of general jurisdiction. Wenche Siemer v. Learjet Acquisition Corp., 966 F.2d 179, 181-82 (5th Cir. 1992) (internal citations omitted).

Nor do the payments by defendant of over $25 million to various vendors suffice. The parties stipulated that, with some exceptions, the services were provided outside the state of Texas. The same result occurs for payments made to claimants that happened to be mailed to Texas. Payments made in Texas, especially for work performed outside the state, fail to demonstrate continuous and systematic general business contacts sufficient for the exercise of general jurisdiction. See, e.g., Choice Healthcare, Inc. v. Kaiser Found. Health Plan, ___ F.3d ___, 2010 WL 3156773 (5th Cir. 2010) (fifty-three payments over

three-year period not continuous and systematic contact with forum state); Stuart, 772 F.2d at 1194 (mailing payments to Texas did not support general jurisdiction); see also Access Telecom, 197 F.3d at 717 n.6 (that defendant paid for services provided by Texas corporations "add[ed] little" to jurisdictional analysis).

Nor are any of the remaining jurisdictional contentions sufficient to establish continuous and systematic contacts with the forum state.  That defendant has engaged in other litigation is not indicative of minimum contacts as to this case.  Dalton v. R&W Marine, Inc., 897 F.2d 1359, 1363 n.4 (5th Cir. 1990). Purchasing municipal bonds from Texas, which plaintiff characterizes as a "benefit" defendant receives from Texas, is also not indicative of continuous and systematic contacts in the forum state.  Plaintiff does not contradict defendant's evidence that it purchased the bonds on the open market through an independent broker.  The court would characterize such a purchase as, at best, doing business "with" Texas, rather than "in" Texas. The former is insufficient to confer general jurisdiction. Access Telecom, 197 F.3d at 717-18.  Cf. Shaffer v. Heitner, 433 U.S. 186, 216 (1977) (in considering general jurisdiction, stating it "strains reason" to suggest that by purchasing securities in a corporation formed in one state an individual

implicitly consents to that state's jurisdiction on any cause of action).

In sum, while plaintiff alleges contacts by defendant that pertain to Texas, plaintiff has failed to prove any "business presence" of defendant in Texas.  Access Telecom, 197 F.3d at 717.  Plaintiff has neither alleged nor adduced evidence that defendant owns any property in Texas, has employees who work in, or travel to, Texas, is currently licensed in Texas, or conducts business of any kind in Texas.  The contacts proved by plaintiff are far less than those which the Supreme Court and the Fifth Circuit have found insufficient for a finding of general jurisdiction.  Plaintiff's evidence does not show the type of "substantial, continuous and systematic contacts required for a finding of general jurisdiction."  Johnston, 523 F.3d at 609-610.

*     *     *     *     *

Because the court finds defendant lacks sufficient minimum contacts with Texas, the court need not consider the "fairness" prong of the jurisdictional inquiry.

V.

Order

Therefore,

The court ORDERS that defendant's motion to dismiss be, and is hereby, granted, and that all claims and causes of action

asserted by plaintiff against defendant be, and are hereby,

dismissed for lack of personal jurisdiction.

SIGNED September 27, 2010.

_____
JOHN McBRYDE
United States District Judge